NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0054n.06

No. 17-1167

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 30, 2018
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SARONTAY DEON BANKS,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

BEFORE: SUHRHEINRICH, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Sarontay Banks belonged to a Detroit-based crew that robbed a Massachusetts jewelry store. For his part, Banks stole a getaway vehicle and waited outside while two other men ran into the store, smashed several glass cases with a sledgehammer, and took fifteen Rolex watches. Banks pleaded guilty to conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a).

The district court sentenced him as a career offender to 151 months in prison (a term at the bottom of the applicable Guidelines range), three years of supervised release, and $85,668 in restitution. Banks challenges that sentence on several grounds. Because Banks has forfeited his lynchpin Guidelines-calculation claim that Hobbs Act robbery does not qualify as a crime of violence, and because his remaining arguments lack merit, we affirm.

I.

Defendant maintains two Guidelines-calculation challenges. His primary contention is that the district court erroneously sentenced him as a career offender under the Guidelines because the instant offense is not a crime of violence.[1] He qualifies as a career offender if the instant felony offense and at least two of his prior felony convictions count as either crimes of violence or controlled-substance offenses. USSG § 4B1.1(a). And Hobbs Act robbery qualifies as a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," or if it is an offense listed in USSG § 4B1.2(a)(2). *See id.* § 4B1.2(a).

Banks failed to develop this argument, so we consider it forfeited. *See United States v. Brown*, 819 F.3d 800, 829 (6th Cir. 2016). He does not address why Hobbs Act robbery would not qualify under the enumerated-offenses clause, which includes robbery and extortion. *See* USSG § 4B1.2(a)(2). Although he asserts without exposition that Hobbs Act robbery can be accomplished without using force capable of causing physical harm, *see* USSG § 4B1.2(a)(1), Defendant acknowledges that we rejected this argument in *United States v. Gooch*, 850 F.3d 285, 290–92 (6th Cir. 2017) and *United States v. Tibbs*, 685 F. App'x 456, 464–65 (6th Cir. 2017). He observes that those cases involved firearms and analyzed the question under 18 U.S.C. § 924(c) rather than the Guidelines, but he does not address any differences between the statutory and the Guidelines crime-of-violence definitions, or otherwise explain why *Gooch* and *Tibbs* are not dispositive here. Such conclusory assertions are no substitute for developed argumentation.

Banks also argues it was error to increase his offense level pursuant to USSG § 2B3.1(b)(2)(D) for "otherwise us[ing]" the sledgehammer during the robbery. But the alleged

---

[1]The 2016 version of the Guidelines Manual applied when Banks was sentenced on February 7, 2017. *See* USSG § 1B1.11(a).

error, if any, was harmless. The offense level calculations made based on the Guidelines applicable to the instant offense did not ultimately determine Banks's sentencing range. Those Guidelines established Banks's base offense level as 20, which was then adjusted to 26 after four levels were added for using the sledgehammer, and another two for the attempted loss amount. His final offense level of 29 was calculated independently based on Banks's career offender status, which required a base offense level of 32. *See* USSG § 4B1.1(b)(3). Because Banks's offense level as a career offender was greater than the otherwise-applicable adjusted offense level of 26, it controlled. *See id.* § 4B1.1(b). The district court plainly chose its sentence based on Banks's career offender status; thus we need not remand because it may have erred in calculating Banks's offense level under Guidelines that did not control. *See Williams v. United States*, 503 U.S. 193, 203 (1992).

II.

Defendant also claims that his sentence is both procedurally and substantively unreasonable. We review reasonableness challenges for abuse of discretion. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). We find that Banks's within-Guidelines sentence is reasonable.

A.

We first consider whether the district court committed "significant procedural error, such as . . . failing to consider the § 3553(a) factors[.]" *Gall v. United States*, 552 U.S. 38, 51 (2007). Banks argues that the district court so erred by failing to consider whether his criminal history was overrepresented, or whether there was a disparity between his Guidelines range and those of his co-defendants, and by basing its sentence on a general perception of the risk a smash-and-

grab robbery poses rather than on the circumstances of the instant offense. We address each argument in turn.

Banks is correct that the district court did not expressly address whether his criminal history was overrepresented even though he asked the district court to vary below the career offender Guidelines range. A district court cannot ignore a defendant's non-frivolous arguments, but "we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument" where a defendant "presents issues that are conceptually straightforward[.]" *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009).

Here, as the government emphasized and the presentence investigation report ("PSR") detailed, thirty-year-old Banks had already been convicted five separate times for drug trafficking offenses, once for larceny from a motor vehicle, and once for armed robbery. The government elaborated that the larceny and armed robbery convictions involved dangerous conduct including a flight from police and Banks pointing a gun at a victim's stomach. Moreover, the government noted, defendant had "absconded" from supervision twice in the past, "had 27 misconducts in prison," and had "[n]ew criminal history almost every time [he had been] on probation." Banks's defense counsel gave no substantive response other than to assert that his client had not dealt drugs "on the scale the government would have the Court believe[,]" had always quickly admitted his guilt once apprehended, and had "apologize[d] for his record" rather than "avoid it."

The issue of Banks's criminal history was thus squarely before the district court, and it concluded that the career offender Guideline range was applicable and appropriate. It stated that defendant had "continuously g[otten] into trouble, and very serious trouble that jeopardize[d] not only himself, but [also the] community." Specifically, the district court noted that defendant

once joined a "horrible" flight from police that endangered both civilians and law enforcement, and that his prior conviction for armed robbery was a "very, very serious offense." And Banks, said the district court judge, had never been successful either in prison or under supervision. The district court continued that although defendant had suffered a terrible childhood, that did not excuse his criminal record because he had been afforded prior opportunities to remedy the effects of his upbringing.

Banks argued at length that he was finally ready to change and that he had a support system in place to facilitate a peaceful and productive transition back into the community. The district court noted, however, that defendant had promised to change his ways before. According to the district court, a Guidelines sentence was thus still appropriate because Banks's *actions* to date showed no "respect for the law." Because the instant offense was extremely serious, and Banks had not been deterred by previous penalties or promises to change, the district court concluded that its sentence must be sufficient to deter defendant and others from future criminal activity and thus protect the community. Accordingly, the district court found that the career offender Guidelines were necessary, and that they "adequately deal[t] with [Banks] without overly penalizing him."

The district court's remarks are logically responsive to defendant's "conceptually straightforward" argument that his criminal history was overrepresented and he thus deserved the variance he was requesting. *See Simmons*, 587 F.3d at 361. Had the district court agreed with Banks's characterization of his past criminal conduct, it would not have emphasized how he had continually broken the law in serious ways, nor would it have chosen a career offender Guidelines sentence. An obvious implication of the district court's decision is that, given Banks's serious criminal conduct and chronic recidivism, a below-Guidelines sentence would

have provided neither adequate deterrence nor adequate public protection. The district court's rationale was thus clear from "the context and the record," and reflected its "considered rejection" of Banks's overrepresentation argument. *United States v. Chiolo*, 643 F.3d 177, 184 (6th Cir. 2011). The district court's "failure to expressly address" that argument therefore "does not make its sentence procedurally unreasonable." *Id.*

Nor is defendant's sentence procedurally unreasonable even though the district court did not expressly address the disparity between his Guidelines range and those applicable to his co-defendants. Banks argued that a reasonable sentence for him "would be consistent with" those imposed on his co-defendants. A district court must consider "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Although a district court *may* exercise its discretion "and determine a defendant's sentence in light of a co-defendant's sentence," it is not *required* to do so under § 3553(a)(6). *Simmons*, 501 F.3d 620, 624 (6th Cir. 2007).

And in any event, as the government emphasized, Banks alone is a career offender. Thus, Banks and his co-defendants were "not similarly-situated within the meaning of § 3553(a)(6)." *See United States v. Thomas*, 395 F. App'x 168, 175 (6th Cir. 2010). The Guidelines "ranges are themselves designed to treat similar offenders similarly." *United States v. Elliot*, 327 F. App'x 540, 549 (6th Cir. 2009) (quoting *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008)). By imposing a Guidelines sentence on Banks "so that we have consistency," the district court was logically responsive to Banks's disparity argument.

Finally, defendant argues it was procedurally improper for the district court to base its sentence on the general risk posed by smash-and-grab robberies as opposed to the circumstances of the instant offense. This myopic argument fails for two reasons. First, Banks cites no legal

authority prohibiting sentencing courts from considering the potential ramifications of a defendant's illegal conduct. On the contrary, § 3553(a) requires district courts to take into account "the *nature* and circumstances of the offense" and its "seriousness." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A) (emphasis added); *see also United States v. Caraway*, 189 F. App'x 460, 463 (6th Cir. 2006) (appropriate for district court to consider the risk to self and others posed by a defendant with a pistol who fled from police).

Second, defendant specifies nothing in the record that indicates the district court based Banks's actual sentence on any such generalized perceptions. Banks was the fourth defendant the district court judge had sentenced for the instant offense. And although Banks asserts otherwise, the district court confirmed (after some initial confusion) that it had previously watched the security video of the specific robbery in which Banks participated. Moreover, the district judge had read the PSR, sentencing memoranda, and the letters submitted by Banks and by others on his behalf. The district court was thus well-aware of the facts specific to Banks's case, and stated that it had considered "the nature and circumstances of the offense" in crafting a sentence. This argument also fails.

In imposing a procedurally reasonable sentence, the sentencing judge must provide an explanation sufficient "to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007); *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007). Because the district court met its obligations here, we find no procedural error.

B.

Defendant's sentence is also substantively reasonable. A district court imposes a substantively unreasonable sentence by "selecting the sentence arbitrarily, . . . failing to consider

pertinent § 3553(a) factors, or giving an unreasonable amount of weight to any pertinent factor." *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005) (footnotes omitted). We presume Banks's bottom-of-the-Guidelines-range sentence is reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Banks's procedural and substantive arguments largely overlap. Here, he similarly faults the district court for placing too much weight on his criminal history, and argues that his sentence is greater than necessary because the district court did not conduct an individualized inquiry. As detailed above, defendant is correct that the district court stressed his past criminal conduct and recidivism as significant factors in its sentencing decision. Given the nature and extent of Banks's criminal history in light of his relatively young age, this concern was not undue; it was a valid reason for imposing a Guidelines sentence. A district court does not commit reversible error simply by "attach[ing] great weight" to a single factor. *Gall*, 552 U.S. at 57. Indeed, "[n]ot all [§ 3553(a) factors] are important in every sentencing; often one or two prevail, while others pale." *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007).

A full review of the sentencing record shows that the district court considered the other pertinent factors in crafting a sentence sufficient, but not greater than necessary, to comply with the purposes of § 3553(a) in this case. Specifically, the district court weighed Banks's personal history and characteristics including his criminal history, difficult childhood, family support, addiction issues, past efforts to reform, and his renewed commitment to rehabilitation against the seriousness of the instant offense, and the need to avoid sentencing disparities, deter future criminal activity, promote respect for the law, and protect the public. Moreover, the district court recommended placement in an institution that would afford defendant an opportunity for mental health and drug treatment, and vocational training. To the extent the court did not

provide a detailed discussion of all of Banks's mitigating circumstances, "a sentencing judge is not required to explicitly address every mitigating argument that a defendant makes[.]" *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008).

Defendant has failed to rebut the presumption that his sentence was reasonable. The district court may not have weighed the § 3553(a) factors as Banks wanted, but that does not compel the conclusion that it imposed his sentence arbitrarily or ignored his arguments for greater leniency. *See United States v. Houston*, 813 F.3d 282, 296 (6th Cir. 2016). We find no abuse of discretion.

III.

Banks maintains that the district court also erred in imposing certain special conditions of supervised release for a three-year term. Specifically, defendant takes issue with being unable to: (1) incur new debt or open new lines of credit without the approval of probation; (2) join or associate with a group oriented toward a criminal purpose, with known gang members, or own or wear clothing that could signify such affiliation; or (3) spend his money on new tattoos or piercings. Banks also challenges the requirement that he (4) obtain his General Educational Development ("GED") certificate. We "generally respect [a district court's] imposition of supervised-release conditions in the absence of an abuse of discretion." *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013).

A.

A district court errs procedurally in imposing special conditions of supervised release if it fails "to state in open court" its rationale for mandating them. *United States v. Doyle*, 711 F.3d 729, 733 (6th Cir. 2013). But any omission is harmless error where the rationale for a condition is discernable from the record as a whole. *Id.* at 733–34.

Banks argues that the district court did not give any rationale for imposing certain release conditions and that no such rationale is discernable from the record.[2] The district court's imposition of supervised release immediately followed its imposition of Banks's sentence of incarceration. When the district court imposed the conditions of supervised release, it did not repeat its explanation for Banks's prison sentence. But as Banks acknowledges, we do not require unnecessarily duplicative discussion where the special conditions of supervised release logically flow from the reasons given for imposing a sentence of incarceration. *See United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

In discussing the § 3553(a) factors and its reasons for imposing defendant's prison sentence, the district court was also discussing its rationale for imposing the conditions of supervised release. *See id.* The district court's remarks reveal its serious concern with Banks's criminal history and recidivism, deterring Banks from committing more crimes, and thus protecting the public; but also with facilitating Banks's "desire to rehabilitate himself." Given defendant's prior gang affiliation, and his history of committing crimes with others (including larceny, armed robbery, and the instant offense), barring him from associating with gang members or displaying any reasonably construable sign of gang affiliation would address these concerns. Moreover, only a slight inference is required to conclude that the district court sought to ensure Banks's ability to make restitution payments by prohibiting him from incurring new debt or opening new lines of credit without prior approval, or from spending his money on

---

[2]We also reject defendant's contention that the district court must have considered the supervisory release Guidelines to be mandatory because it did not state otherwise. Treating the Guidelines as mandatory is procedural error. *See Gall*, 552 U.S. at 51. But the district court said nothing here to suggest that it felt bound by the Guidelines. Rather, it explained that "the Court has to start with" the Guidelines, "and then look at the issues." "That the guidelines are advisory is, by now, a basic tenet of federal criminal sentencing" and "[w]e presume that federal judges know the law." *United States v. Vega-Salgado*, 769 F.3d 100, 104 (1st Cir. 2014); *cf. United States v. Gale*, 468 F.3d 929, 941 (6th Cir. 2006). This argument provides no grounds for relief.

nonessentials like tattoos and piercings. The same is true for the GED requirement, a condition that addresses Banks's rehabilitation, ability to pay restitution, and his recidivist history by helping to ensure his future employability through necessary educational training.

The sentencing factors discussed by the district court are thus "relevant" to the special conditions of supervised release, "and make the basis of its decision sufficiently clear on the record to permit reasonable appellate review." *United States v. Presto*, 498 F.3d 415, 419 (6th Cir. 2007) (internal quotation marks omitted). Accordingly, to the extent that the district court judge could have given a more explicit explanation for imposing each condition, any error is harmless. *Doyle*, 711 F.3d at 733–34. Whether these conditions were in fact warranted is a question of substantive reasonableness, to which we now turn.

## B.

For sentences of supervised release, a non-mandatory condition must: (1) be "reasonably related to" a sentencing factor like "the nature and circumstances of the offense" or "the history and characteristics of the defendant," (2) "involve[] no greater deprivation of liberty than is reasonably necessary" to serve a sentencing purpose such as deterrence, protecting the public, or providing educational training, and (3) be "consistent with any pertinent policy statements issued by the Sentencing Commission." *United States v. Carter*, 463 F.3d 526, 529 (6th Cir. 2006) (quoting 18 U.S.C. § 3583(d)(1)–(3)). "[A] condition need not satisfy every single factor and purpose within each of the first two requirements." *Id.*

Defendant develops no argument regarding policy statements. Instead, he challenges the aforementioned special conditions as unrelated to any sentencing factor or purpose, and argues that the three-year term of supervised release therefore constitutes a greater-than-reasonably-necessary deprivation of his liberty. We disagree.

Banks objects to the requirement that he complete his GED as potentially burdensome while also claiming that he has already earned it. Banks must comply only if his "GED cannot be verified." And in any event, this condition was imposed in partial response to defendant's own statements that he was "determined to better [himself] while incarcerated," and wanted to further his education. When explaining its sentence, the district court referenced Banks's "desire to rehabilitate himself" and to "get out and be able to get a job and to support his family." Ensuring that Banks obtains at least a GED, if he does not in fact already have one, thus addresses the rehabilitative purpose of sentencing and Banks's own professed desire to break from his criminal past. *See* 18 U.S.C. § 3553(a)(2)(D). Not to mention that facilitating his future employability through necessary educational training will help ensure Banks's ability to pay restitution while reducing his risk of recidivism. *See id.* § 3553(a)(1), (a)(2)(C)–(D), (a)(7). The district court did not abuse its discretion in imposing this condition.

Defendant also objects to being unable to incur new debt or open new lines of credit without permission, or to spend any money on additional tattoos and piercings.[3] But the instant offense was a *robbery* that resulted in a monetary loss to the victims and a restitution award. The district court must consider "the need to provide restitution to any victims" when determining the length and conditions of supervised release. *See id.* § 3583(c); *id.* § 3553(a)(7). Here, the district court was fully aware, via the PSR, of defendant's history of chronic unemployment, lack of assets, and lack of vocational training. *See United States v. Weiss*, 328 F.3d 414, 417–18 (8th Cir. 2003) (condition prohibiting incursion of new debt or new lines of credit was reasonable considering defendant's "documented history of unemployment," lack of assets, and restitution

---

[3]To the extent defendant is also challenging his obligation to provide his probation officer access to his financial records upon request, the Guidelines expressly recommend imposing that condition where, as here, the sentencing court also imposes a restitution order. USSG § 5D1.3(d)(3).

order). And the district court observed that Banks had never been productive "in terms of his post-jail time," and that he had previously admitted to only "want[ing] to earn money so he could buy drugs." The judge later underscored that "if [Banks] has any money, he's to make restitution" rather than spend it on nonessential tattoos and piercings. In light of its reasonable concerns about Banks's willingness and ability to pay restitution, the district court did not abuse its discretion in imposing these conditions.

Finally, Banks objects to the related conditions that he not join or associate with any group oriented toward a criminal purpose, with known gang members, or possess, wear, or display clothing bearing large insignias. Although defendant asserts that he is no longer a member of a gang, his defense counsel argued at sentencing that his client's recidivism was due in large part to defendant returning to "the same community" and being around "the same associates" every time he had been released before. Those associates, according to Banks's lawyer, encouraged Banks to continue leading a life of crime. Indeed, Banks committed the instant offense, as well as larceny and armed robbery, with others.

Defense counsel asserted that his client was now ready "to get away from the situation that fostered this entire criminal lifestyle[.]" Therefore, preventing Banks from once again falling in with any "associates" upon release, and from owning or displaying any construable sign of such affiliation including certain types of clothing, are conditions reasonably related to Banks's criminal history and to breaking his cycle of recidivism. *See* 18 U.S.C. § 3583(d)(1); *id.* § 3553(a)(1). In curbing any such affiliations, these conditions serve the sentencing purposes of deterring future criminal conduct and thus protecting the public. *See* 18 U.S.C. § 3583(d)(1); *id.* § 3553(a)(2)(B)–(C). The district court did not abuse its discretion in imposing these conditions either.

We afford defendant's within-Guidelines three-year term of supervised release "a rebuttable presumption of reasonableness." *United States v. Coffee*, 180 F. App'x 562, 564 (6th Cir. 2006); *see* USSG § 5D1.2(a)(2). Defendant has failed to rebut that presumption because the conditions he contests are each reasonably related to the instant offense or to his own history and characteristics, and serve several purposes of sentencing. Moreover, the lengthier term is reasonable considering, as the district court acknowledged, that Banks has never adjusted well to supervision, having absconded from, and been arrested for new criminal conduct while on, parole.

Accordingly, we find no abuse of discretion here in imposing these special conditions for three years, and note that the district court shall have "abundant opportunity to amend or ameliorate any unreasonable adverse impact during the term of [Banks's] supervised release." *United States v. Deatherage*, 682 F.3d 755, 765 (8th Cir. 2012); *accord. Zobel*, 696 F.3d at 575; *see* 18 U.S.C. § 3583(e)(2).

IV.

For these reasons, we affirm Banks's sentence.